IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

RG STEEL WHEELING, LLC,
a Delaware limited liability
company, debtor-in-possession,

    Plaintiff,

v.                                                       Civil Action No. 5:13CV7
                                                                     (STAMP)
THE HEALTH PLAN OF THE
UPPER OHIO VALLEY INC.,
a West Virginia corporation,

    Defendant.

**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT'S SECOND MOTION TO DISMISS**

### I. Background

The plaintiff, RG Steel Wheeling, LLC, ("RG Steel" or "plaintiff") filed this civil action in this Court on January 18, 2013. The plaintiff's complaint alleges that The Health Plan of the Upper Ohio Valley, Inc. ("The Health Plan" or "defendant") had entered into a contract, the Administrative Services Agreement, with RG Steel which required The Health Plan to manage two medical benefit plans for retirees: (1) those who were eligible before August 1, 2003, tax-exempt Voluntary Employee Beneficiary Association beneficiaries ("VEBA beneficiaries"), and (2) those who were not eligible before that date, "non-VEBA beneficiaries." The complaint further asserts that The Health Plan mismanaged the two retirement funds resulting in the overpayment of $1,455,522.03 to the VEBA beneficiaries' trust account, causing a loss of the same amount to RG Steel. The plaintiff alleges that this loss occurred

when RG Steel entered bankruptcy in May 2012, and the VEBA beneficiaries offset the payment that The Health Plan had negligently placed in the wrong bank account.[1]

In response to the complaint, the defendant filed a motion to dismiss this case in its entirety for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and/or for failure to join an indispensable party under Federal Rule of Civil Procedure 12(b)(7).[2]

The defendant thereafter filed a supplemental brief to the motion to dismiss or, in the alternative, a second motion to dismiss under Rule 12(b)(6). This Court then ordered that this filing be treated as a second motion to dismiss and directed the parties to submit further briefs on the issues raised in the defendant's second motion to dismiss, as well as potential issues raised by this Court during oral argument on the motion held on September 6, 2013. See ECF No. 29.

A. The Plaintiff's Brief

In its brief, the plaintiff first argues that RG Steel Wheeling and its previous entities (Wheeling-Pittsburgh Steel Corp.

---

[1] As this Court has set forth a more detailed description of the plaintiff's complaint in another order, it will be omitted here. See ECF No. 31.

[2] This Court heard oral argument on the motion to dismiss on September 6, 2013. Rulings were made at the conclusion of that hearing. This Court then entered a memorandum opinion and order confirming its pronounced order denying the defendant's motion to dismiss in part and granting it in part. A more complete background of the defendant's first motion to dismiss can be found at ECF No. 31, and is omitted here.

and Severstal) had a contractual relationship with the defendant to manage group health benefits for both the VEBA beneficiaries and the non-VEBA beneficiaries, however, the non-VEBA beneficiaries were paid through RG Steel instead of a separate account. The plaintiff also reports that the Delaware bankruptcy court's order states that the stipulation by the parties, RG Steel and the VEBA beneficiaries, does not release any person or entity that is not a party to the stipulation.

The plaintiff then contends that the cases cited by this Court in the September 6, 2013 oral argument, <u>Board of Education of McDowell County v. Zando, Martin & Milstead Inc.</u>, 390 S.E.2d 796 (W. Va. 1990) and <u>Groves v. Compton</u>, 280 S.E.2d 708 (W. Va. 1981), do not apply to the facts of this case because those cases deal with a single indivisible loss arising from the actions of multiple parties that have contributed to the loss. Here, the plaintiff asserts, the VEBA beneficiaries have not contributed to the loss suffered by RG Steel; the VEBA beneficiaries have simply retained the negligently placed money.

The plaintiff further argues that the defendant's best route of action would be to institute a third-party action against the VEBA beneficiaries. The plaintiff contends, however, that this route would likely fail because the VEBA beneficiaries were innocent recipients of the misplaced money through the bankruptcy proceedings of RG Steel. Finally, the plaintiff asserts that it would not be receiving double recovery if it wins this case because

3

the damages are in excess of $1.7 million and would be used to satisfy the claims of the other creditors of RG Steel who did not receive the same treatment as the VEBA beneficiaries because of The Health Plan's mistake.

In its response to the plaintiff's brief, the defendant claims that based on RG Steel's complaint, every claim in this action against it is based on the same set of facts as the settlement reached with the VEBA beneficiaries in the Delaware bankruptcy court. The Health Plan then contends that even if there were different actions contributing to the loss, West Virginia law still views the two parties as joint tortfeasors if the detrimental outcome was the consequence of both actors' behavior (i.e. The Health Plan and the VEBA beneficiaries). Further, the defendant argues that although the plaintiff claims that The Health Plan negligently placed money in the wrong account, it was also negligent for the VEBA beneficiaries to not notify RG Steel or The Health Plan of the overpayment; thus, there would be a unity of causation.

Additionally, the defendant claims that it can set forth claims of negligence and/or conversion against the VEBA beneficiaries, and claims of unjust enrichment and/or failure to mitigate damages against RG Steel and the VEBA beneficiaries. The Health Plan also contends that it would have joined the bankruptcy court proceedings between RG Steel and the VEBA beneficiaries had it not relied on its belief that the settlement in bankruptcy court

4

would be credited toward this litigation. Finally, the defendant argues that it is entitled to a set-off value of the full bankruptcy settlement between the VEBA beneficiaries and RG Steel because under West Virginia law, the set-off amount is calculated based on the face amount of the settlement.

B. The Defendant's Brief

In its brief, the defendant first argues that it is entitled to a set-off of the good faith settlement reached by RG Steel and the VEBA beneficiaries. Based on the case cited by this Court, Zando, and the case law that follows it, the defendant contends that because it seeks contribution from the VEBA beneficiaries as a settling non-party, it is entitled to a set-off of any verdict rendered against it equivalent to the amount of the settlement in excess of $1.7 million. Thus, because of that set-off, the defendant asserts, RG Steel would no longer have a claim against The Health Plan.

Further, relying on the West Virginia case law in Zando and related cases, the defendant claims in its second argument that this Court has the authority, if the parties do not agree, to determine the manner of handling the set-off in this case. The defendant thus asks that this Court use a set-off amount of the settlement reached in bankruptcy court because the facts underlying the case in bankruptcy court between the VEBA beneficiaries and the plaintiff are the same as the facts underlying this case between RG Steel and the defendant. Thus, the defendant asserts, because West

Virginia case law disallows double recovery by a plaintiff, this Court should not allow RG Steel to be unjustly enriched. The defendant asks that this Court permit a set-off in the amount of $1,704,585.03.

In its response, RG Steel argues that The Health Plan has failed to show that the VEBA beneficiaries and The Health Plan are jointly liable under a common cause of action. Further, the plaintiff contends that the two parties did not contribute to a single, indivisible loss because the VEBA beneficiaries were not a party to the Administrative Services Agreement. The plaintiff also claims that if The Health Plan has a claim against the VEBA beneficiaries, it can make those claims as a result of the bankruptcy court's order, but it cannot make those claims as a set-off against RG Steel. Finally, the plaintiff asserts that it is too early in this litigation to allow a complete dismissal on the set-off issue because the facts are underdeveloped, thus, a Rule 12(b)(6) dismissal would be premature.

Having reviewed the parties' pleadings and the relevant law, this Court finds that the defendant's motion to dismiss should be denied.

## II. Applicable Law

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to raise the defense of "failure to state a claim upon which relief can be granted" as a motion in response to a plaintiff's complaint before filing a responsive pleading.

In assessing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept the factual allegations contained in the complaint as true. Advanced Health-Care Servs., Inc. v. Radford Cmty. Hosp., 910 F.2d 139, 143 (4th Cir. 1990). Dismissal is appropriate only if "'it appears to be a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proven in support of its claim.'" Id. at 143-44 (quoting Johnson v. Mueller, 415 F.2d 354, 355 (4th Cir. 1969)); see also Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir. 1989).

A motion to dismiss for failure to state a claim under Rule 12(b)(6) should be granted only in very limited circumstances, as the pleading requirements of Federal Rule of Civil Procedure 8(a)(2) only mandate "a short and plain statement of a claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Still, to survive a motion to dismiss, the complaint must demonstrate the grounds to entitlement to relief with "more than labels and conclusions . . . factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 663-666 (2009).

III. Discussion

In order to satisfy the pleading requirements of Federal Rule of Civil Procedure 8, the plaintiff must simply present a "short and plain statement of the claim showing that the pleader is

entitled to relief." Fed. R. Civ. P. 8(a)(2). As explained above, this does not mandate that the plaintiff prove its claim at the point of pleading, but only that it present sufficient facts to convince the Court that its claim is "plausible." Twombly, 550 U.S. at 555.

The defendant contends that the plaintiff is unable to show that its claim is sufficient because RG Steel has already received a settlement with the VEBA beneficiaries in the same amount that it is claiming is due from the defendant. The Health Plan further argues that it is entitled to a set-off of the settlement amount reached in the Delaware bankruptcy court which would then destroy the plaintiff's claim for damages here because the two claims arise from the same set of events.

The plaintiff claims that there are still damages to be had even after it settled with the VEBA beneficiaries. RG Steel argues that The Health Plan is not entitled to a set-off because this is not a joint tortfeasor action, the VEBA beneficiaries were not part of the Administrative Services Agreement that is alleged to be the basis of the complaint against The Health Plan. Thus, the plaintiffs contend, the claims against The Health Plan and the settlement with the VEBA beneficiaries do not arise out of the same events.

"The right of contribution arises from liability for a joint wrong committed by two or more parties against the plaintiff." Zando, 390 S.E.2d 801. For instance, in Zando, the plaintiff in a

negligence and breach of contract case settled with the third-party defendants before the jury trial ended. Id. The remaining defendant, however, proceeded to the end of trial and the plaintiff was awarded a $1,000,000.00 verdict. Id. The trial court found that the remaining defendant was not entitled to a set-off from the settlements reached between the plaintiff and the third-party defendants. Id. The West Virginia Supreme Court reversed and found that a practice had arisen in West Virginia "allowing the defendant against whom a verdict is rendered to reduce the damages to reflect any partial settlement the plaintiff has obtained from a joint tortfeasor." Id. at 803. The court scaled back this pronouncement, however, by also holding that because "damages are often speculative and liability uncertain [and] the amount of a settlement legitimately might be far different from a damage award which results from full litigation[,]" a trial court must determine whether the settlement was in good faith and whether the "settlement arrangement substantially impaired the remaining defendants from receiving a fair trial." Id. at 804-05 (citing O'Connor v. Pinto Trucking Serv., 501 N.E.2d 263 (Ill. App. 1986)).

Although the defendant makes a compelling argument, this Court finds that dismissing the case at this point in the case would be premature. In oral argument during the September 6, 2013 hearing, the plaintiff was unable to point to a specific contract (oral or written) that was the basis of its complaint but was confident that a contract in fact existed, the Administrative Services Agreement.

Further, the plaintiff states in the briefings for this motion that it believes there were contracts not only between RG Steel and The Health Plan, but also with its previous entities, Wheeling-Pittsburgh Steel Corp. and Severstal. See ECF No. 33 *2. These type of questions of the duties owed between the two parties, and the duties between the parties and the VEBA beneficiaries, reduce this Court's ability to determine whether a set-off is appropriate in this case. Thus, the parties would best be served by discovery and further investigation.

Additionally, this Court interprets the Zando case and other West Virginia case law as requiring a verdict before any determination can be made of whether the settlement was reached in good faith or whether or not a set-off is even required. The court in Zando repeatedly refers to a verdict in discussing the determination of a credit owed to a remaining defendant. See generally Zando, 390 S.E.2d at 802-809. This conclusion is further supported by Groves wherein the West Virginia Supreme Court lists several different methods of determining how a settlement paid by a joint tortfeasor should be handled as a credit to the remaining defendant(s). Groves, 280 S.E.2d at 711. The court in Groves listed the methods of handling a settlement, all of which require a final verdict:

> [t]he jury can be informed of the amount of the settlement and instructed that they must deduct this amount from their award of damages . . . . [the court can] make no reference to the settlement; and, after the verdict is returned and judgment entered, the defendant may utilize the settlement figure 'when an attempt to

> satisfy the judgment is made' . . . . [or] by stipulation of the parties, the amount of the settlement can be used as a credit and deducted from the amount of the jury verdict.

Id. Thus, at this stage of the proceedings, wherein a verdict has yet to occur, too many unanswered questions remain to grant a motion to dismiss at this time.

As stated previously, it is unclear exactly what the terms of the contract between the parties are or what type of contract was formed. Without this information, it would be difficult for this Court to determine (1) whether or not the VEBA beneficiaries are simply an innocent party or a joint tortfeasor with The Health Plan and/or, (2) as the defendant claims, whether or not the VEBA beneficiaries are a tortfeasor with the plaintiff for failure to report the misplacement of the funds. Consequently, the actual duties of the parties to each other are unclear at this point in the litigation and thus it is unclear whether or not the plaintiff has a claim to damages above and beyond the amount reached in the settlement with the VEBA beneficiaries or even whether the settlement with the VEBA beneficiaries should matter in the instant case, as it pertains to the contribution due to The Health Plan. These types of questions may be answered through discovery and further investigation, or even possibly through a jury trial that results in a verdict that allows this Court to determine what, if any, credit the defendant is entitled to based on the bankruptcy settlement.

Finally, this Court notes that "[a] settlement entered into between a nonparty and a claimant prior to the instigation of a lawsuit, should discharge the nonparty from further obligation to either the claimant or the nonparty's joint tortfeasor, as long as the settlement was entered into in good faith and the amount of the settlement is disclosed to the trial court for verdict reduction." Cline v. White, 393 S.E.2d 923, 926 (W. Va. 1990). This same concept has been reinforced and upheld by later West Virginia Supreme Court cases exemplifying the extension of Zando. Smith v. Monongahela Power Co., 429 S.E.2d 643, 649 (W. Va. 1993); Cook v. Stansell, 411 S.E.2d 844, 846-47 (W. Va. 1991). This extension, however, must also be reigned in by the fact that in order to receive credit for the settlement of a nonparty, the non-settling defendant must be able to show that "there is a single and indivisible injury, the damages are inseparable[,] and any amounts received from any of the defendants must be deducted from the total damages sustained." Zando, 390 S.E.2d at 808.

Again, even with the case law above ensuring that a nonparty settlement can be considered as credit to a non-settling defendant, The Health Plan must also show that there is enough information to determine that there was a single and indivisible injury. Given that there is not a clear picture as to where each party stands in relation to each other; based on the bankruptcy settlement, contract(s) or lack of a contract involved in this case, and the plaintiff's claim as to a fiduciary duty between it and The Health

12

Plan otherwise; the defendant has not proven that the plaintiff's claim for damages does not rise above a speculative level. At this stage in the litigation, it has not been shown that the VEBA beneficiaries are a nonparty tortfeasor or are, as the plaintiff contends, an innocent party who received money from an alleged negligent mistake by The Health Plan. Because of these uncertainties, this Court reiterates that the discovery process and investigation will ensure that these issues are absolved and this action is not prematurely dismissed.

Accordingly, this Court finds that dismissal is not warranted at this time because it is uncertain what the relationships and obligations are between the parties, specifically whether or not there has been a single indivisible loss caused by both The Health Plan and the VEBA beneficiaries, and those facts are integral to the determination of whether a set-off should be granted. The plaintiff still has a "plausible" claim to damages, Twombly, 550 U.S. at 555, and thus the defendant's second motion to dismiss is denied.

## IV. Conclusion

For the reasons stated above, the defendant's second motion to dismiss (ECF No. 13) is DENIED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED: October 3, 2013

                                        /s/ Frederick P. Stamp, Jr.
                                        FREDERICK P. STAMP, JR.
                                        UNITED STATES DISTRICT JUDGE